**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISANDRA RIVERA, on behalf of her minor child, S.S. and MICHAEL SOBOL, on behalf of himself, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RICHMOND UNIVERSITY MEDICAL CENTER<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs, Lisandra Rivera, on behalf of her minor child S.S., and Michael Sobol, on behalf of himself and all others similarly situated, states as follows for their class action complaint against Defendants, Richmond University Medical Center ("RUMC" or "Defendant"):

**INTRODUCTION**

1. On May 6, 2023, RUMC, a healthcare institution based in Staten Island, New York, lost control over its computer network and the highly private Sensitive Information stored on the computer network in a data breach perpetrated by cybercriminals ("Data Breach").

2. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to patients' personally identifiable information ("PII") including date of birth and social security number, as well as private health information ("PHI") medical diagnosis and medical treatment information. PII and PHI are collectively referred to as "Sensitive Information".

3. On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access current and former patients' Sensitive Information in its computer

systems.

4. On or about December 19, 2024, RUMC finally notified state Attorneys General and many Class Members, including Plaintiff, about the widespread Data Breach ("Breach Notice"). Plaintiff's Sobol's breach notice is attached as **Exhibit A**. RUMC waited an appalling nineteen months before informing Class Members even though Plaintiffs and approximately 675,033 Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5. Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its patients how many people were impacted, how the breach happened, or why it took the Defendant an appalling nineteen months to begin notifying victims that hackers had gained access to highly private Sensitive Information.

6. Defendant's failure to timely detect and report the Data Breach made its patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

7. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

8. In failing to adequately protect patients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed thousands of its current and former patients.

9. Plaintiffs and members of the proposed Class are victims of Defendant's negligence

and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10. Plaintiff Rivera's minor child, S.S. is a Data Breach victim.

11. Plaintiff Sobol is a Data Breach victim.

12. Accordingly, Plaintiffs bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

**PARTIES**

13. Plaintiff, Lisandra Rivera, is a natural person and citizen of New York, residing in Staten Island, New York, where she intends to remain.

14. Plaintiff, Michael Sobol, is a natural person and citizen of New York, residing in Staten Island, New York, where he intends to remain.

15. Defendant Richmond University Medical Center. is a New York domestic, not for profit corporation with its principal place of business located at 355 Bard Avenue, Staten Island, New York.

**JURISDICTION & VENUE**

16. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the proposed Class are citizens of different states than Defendant. And there are over 100 putative Class Members.

17. This Court has personal jurisdiction over Defendant because it is headquartered in New York, regularly conducts business in New York, and has sufficient minimum contacts in New York.

18. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND FACTS

***RUMC***

19. RUMC is "a 440+ bed healthcare facility and teaching institution serving borough residents as a leader in the areas of acute, medical and surgical care, including emergency care, surgery, minimally invasive laparoscopic and robotic surgery, gastroenterology, cardiology, pediatrics, podiatry, endocrinology, urology, oncology, orthopedics, neonatal intensive care and maternal health.[1] RUMC boasts a total annual revenue of $41.8 million.[2]

20. As part of its business, Defendant receives and maintains the Sensitive Information of thousands of current and former patients. In doing so, Defendant implicitly promises to safeguard their Sensitive Information.

21. In collecting and maintaining their current and former patients' Sensitive Information, Defendant agreed that it would safeguard the data in accordance with state law and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Sensitive Information

22. Indeed, Defendant acknowledges in its privacy policy that "Richmond University Medical Center is committed to protecting your privacy and developing technology that gives you the most powerful and safe online experience."[3]

---

[1] RUMC, https://www.rumcsi.org/about/ (last visited January 6, 2024).

[2] RUMC, Zoominfo, https://www.zoominfo.com/c/richmond-university-medical-center/355373789 (last visited January 6, 2024).

[3] RUMC, Privacy Policy, https://www.rumcsi.org/about/website-privacy-policy/ (last visited January 6, 2025).

> **Security of Your Personal Information**
>
> Richmond University Medical Center secures your personal information from unauthorized access, use or disclosure. Richmond University Medical Center secures the personally identifiable information you provide on computer servers in a controlled, secure environment, protected from unauthorized access, use or disclosure. When personal information (such as a credit card number) is transmitted to other websites, it is protected through the use of encryption, such as the Secure Socket Layer (SSL) protocol.

23. Despite recognizing its duty to do so, on information and belief, RUMC has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, RUMC leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' Sensitive Information.

***RUMC Fails to Safeguard Patients' Sensitive Information***

24. Plaintiff Sobol is a patient at RUMC.

25. Plaintiff Rivera's minor child, S.S., has been a patient at RUMC for over a decade.

26. As a condition of receiving RUMC's services, Plaintiffs provided Defendant with their own or their minor children's Sensitive Information. Defendant used that Sensitive Information to facilitate services to Plaintiffs, or in Plaintiff Rivera's case, her minor child, and required Plaintiffs to provide that Sensitive Information to obtain their services.

27. On information and belief, RUMC collects and maintains patients' Sensitive Information in its computer systems.

28. In collecting and maintaining Sensitive Information, RUMC implicitly agrees it will safeguard the data using reasonable means according to state and federal law.

29. According to the Breach Notice, RUMC claims that it discovered an "unauthorized access to our network that resulted in the unauthorized access to, or acquisition of, certain files by

an unauthorized actor[.]" Following an internal investigation, Defendant discovered that "certain [] files may have been accessed or removed from our network on or around May 6, 2023." Ex. A.

30. In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain files containing a treasure trove of thousands of RUMC's patients' personal and highly private Sensitive Information.

31. On or around December 19, 2024, an appalling *nineteen* (19) months after the Breach occurred, Defendant finally began notifying Plaintiffs and Class Members about the Data Breach.

32. Despite its duties to safeguard Sensitive Information, RUMC does not follow industry standard practices in securing patients' Sensitive Information, as evidenced by the Data Breach.

33. Through its inadequate security practices, Defendant exposed Plaintiffs' and the Class's Sensitive Information for theft and sale on the dark web.

34. In response to the Data Breach, RUMC contends that it plans to "continually evaluate and modify our practices and internal controls to enhance the security and privacy of your information." Though RUMC fails to expand on what these alleged "enhancements" are, such enhancements, should have been in place before the Data Breach.

35. Through its Breach Notice, RUMC recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to be "vigilant in reviewing your financial account statement, explanation of benefit statements and credit reports for fraudulent or irregular activity[.]" Ex. A.

36. Defendant also recognized its own failure to implement safeguards in accordance

with its internal policies, state law, and federal law, as well as the actual imminent harm and injury resulting from the Data Breach, asking its victims to "Please accept our apologies that this incident occurred. We are committed to maintaining the privacy of personal information in our possession[.]" Ex. A.

37. On information and belief, RUMC has offered several months of complimentary credit monitoring services to victims during that time, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

38. Even with several months of credit monitoring, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

39. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

40. On information and belief, RUMC failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

41. Defendant's data security obligations were particularly important given the

substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

42. In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' Sensitive Information would be targeted by cybercriminals.

43. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[4] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[5]

44. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [6]

45. Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[7]

---

[4] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited June 5, 2023).

[5] *Id*.

[6] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited March 13, 2023).

[7] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 13, 2023).

46. Moreover, the risk to Plaintiff Rivera's minor child, and other potential minor Class members is substantial given their age and lack of established credit because their information can be used to create a "clean identity slate." It is not surprising, then, that one report found that children are 51% more likely be victims of identity theft than adults.[8] Cybercriminals on the dark web have been caught selling Social Security numbers of infants for $300 per number to be used on fraudulent tax returns.[9]

47. According to Robert P. Chappell, Jr., a law enforcement professional, a minor's information can be stolen and used until the minor turns eighteen years old before the minor even realizes he or she has been victimized.[10]

48. In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[11]

49. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including RUMC.

***Minor, S.S., Experience and Injuries***

50. Plaintiff received a Breach Notice stating that her minor child's Sensitive Information was exposed during the Data Breach.

51. Plaintiff's minor child, S.S., has been a patient at RUMC for over a decade. As a

[8] Avery Wolfe, *How Data Breaches Affect Children*, Axion Cyber Sols., https://axiomcyber.com/data-breach/how-data-breaches-affect-children/(last visited March 13, 2023).
[9] *Id.*
[10] Brett Singer, *What is Child Identify Theft?*, Parents, https://www.parents.com/kids/safety/tips/what-is-child-identity-theft/ (last visited March 13, 2023).
[11] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited July 15, 2023);

condition of receiving RUMC' services, Plaintiff provided Defendant with her minor child's Sensitive Information. Defendant used that Sensitive Information to facilitate its services to Plaintiff's minor child and required Plaintiff to provide that Sensitive Information to obtain Defendant's services.

52. Plaintiff provided her minor child's Sensitive Information to Defendant and trusted that it would use reasonable measures to protect it according to its internal policies as well as state and federal law.

53. Plaintiff reasonably believed that a portion of the funds she paid Defendant for treatment services of her minor child would be used to provide adequate data security for her minor child's Sensitive Information.

54. Defendant deprived Plaintiff of the earliest opportunity to guard her minor child, S.S., against the Data Breach's effects by failing to notify her about it for nineteen months.

55. Defendant exposed Plaintiff's minor child's Sensitive Information for theft by cybercriminals and sale on the dark web.

56. Plaintiff does not recall ever learning that her minor child's Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

57. As a result of the Data Breach and the recommendation of Defendant's Notice Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring his minor child's information to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

58. Plaintiff fears for her minor child's personal financial security and uncertainty over what Sensitive Information exposed in the Data Breach. Plaintiff has and is experiencing feelings

of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

59. Plaintiff's minor child, S.S., suffered actual injury from the exposure of her Sensitive Information —which violates her rights to privacy.

60. Plaintiff's minor child, S.S., has suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

61. Plaintiff's minor child, S.S., has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

62. Defendant's offer of free credit monitoring does nothing to Protect Plaintiff's minor child, S.S., because the child must have established credit to enroll. As a minor, S.S. does not have established credit yet. However, hackers may still use a minor's information to take out credit cards and car loans.[12] A child's information can be stolen at birth and used until the child turns eighteen years old before the child realizes they've been victimized.[13]

63. The risk to Plaintiff child, S.S., as a minor, is substantial given the minor's lack of established credit because his information can be used to create a "clean identity slate." Plaintiff minor child, S.S., remains at a present and continued risk of harm due to the exposure and potential misuse of her personal data by criminal hackers.

[12] Hackers are leaking children's data — and there's little parents can do, NBC News (Sept. 10, 2021) https://www.nbcnews.com/tech/security/hackers-are-leaking-childrens-data-s-little-parents-canrcna1926

[13] Brett Singer, What is Child Identity Theft? Parents.com, https://www.parents.com/kids/safety/tips/what-is-child-identity-theft/

64. Ms. Rivera has a continuing interest in ensuring that her minor child's Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff Sobol's Experience and Injuries***

65. Plaintiff Sobol is a patient of Defendant's and a data breach victim. As a condition of receiving RUMC's services, Plaintiff provided Defendant with his Sensitive Information, including but not limited to his name, Social Security number, medical information and medical treatment history information. Defendant used that Sensitive Information to facilitate its services to Plaintiff and required Plaintiff to provide that Sensitive Information to obtain Defendant's services.

66. Plaintiff provided his Sensitive Information to Defendant and trusted that it would use reasonable measures to protect it according to its internal policies as well as state and federal law.

67. Plaintiff reasonably believed that a portion of the funds he paid Defendant for treatment services would be used to provide adequate data security for his Sensitive Information.

68. Defendant deprived Mr. Sobol of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for nineteen months.

69. Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

70. Plaintiff does not recall ever learning that his Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

71. As a result of the Data Breach and the recommendation of Defendant's Notice Mr. Sobol has spent time dealing with the consequences of the Data Breach, which includes time spent

verifying the legitimacy of the Notice of Data Breach, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

72. Mr. Sobol has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Mr. Sobol fears for his personal financial security and uncertainty over what Sensitive Information exposed in the Data Breach. Mr. Sobol has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

73. Plaintiff suffered actual injury from the exposure of his Sensitive Information — which violates his rights to privacy.

74. Mr. Sobol has suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

75. Mr. Sobol has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

76. Indeed, shortly after the Data Breach, Plaintiff began suffering a significant increase in spam calls and texts. These spam calls suggest that his Sensitive Information is now in the hands of cybercriminals.

77. Once an individual's PII is for sale and access on the dark web, as Plaintiff's Sensitive Information is here as a result of the Breach, cybercriminals are able to use the stolen

and compromised to gather and steal even more information.[14] On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach.

78. Mr. Sobol has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

79. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

80. The ramifications of Defendant's failure to keep Plaintiffs' and the Class's Sensitive Information secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, date of birth, Social Security number, or driver's license number, without permission, to commit fraud or other crimes.

81. The types of Sensitive Information compromised and potentially stolen in the Data Breach is highly valuable to identity thieves. The patients' stolen Sensitive Information can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

82. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

83. Identity thieves can also use the stolen data to harm Plaintiffs and Class members

[14] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.

84. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of the Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in their possession.

85. Stolen Sensitive Information is one of the most valuable commodities on the

criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

86. The value of Plaintiffs' and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

87. It can take victims years to spot identity or PII and PHI theft, giving criminals plenty of time to use that information for cash.

88. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

89. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

90. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other members of the proposed Class's stolen Sensitive Information is

being misused, and that such misuse is fairly traceable to the Data Breach.

91. Defendant disclosed the Sensitive Information of Plaintiffs and the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

92. Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, as evidenced by its complete failure to prevent malware in its systems, demonstrates a willful and conscious disregard for privacy, and has exposed the Sensitive Information of Plaintiffs and members of the proposed Class to unscrupulous operators, con-artists, and criminals.

93. Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

94. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

95. In 2016, the FTC updated its publication, Protecting Sensitive Information: A

Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

96. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

97. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

98. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer, or in this case, patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

99. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

100. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[15]

101. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[16]

102. The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

---

[15] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[16] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

103. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant's failure to comply with safeguards mandated by HIPAA regulations.

***Defendant Failed to Follow Industry Standards***

104. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication;

backup data; and limiting which employees can access sensitive data.

105. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

106. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

107. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

108. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> **All individuals whose Sensitive Information was accessed without authorization in the Data Breach, including all those who received a notice of the Data Breach.**

109. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

110. Plaintiffs reserve the right to amend the class definition.

111. This action satisfies the numerosity, commonality, typicality, and adequacy requirements for suing as representative parties:

112. **Numerosity**. Plaintiffs are representative of the proposed Class, consisting of several thousands of individuals, far too many to join in a single action;

113. **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

114. **Typicality.** Plaintiffs' claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

115. **Adequacy.** Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

116. **Commonality.** Plaintiffs and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

a. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

d. Whether Defendant breached contract promises to safeguard Plaintiffs and the Class's Sensitive Information;

e. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether Defendant's Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiffs' and the Class's injuries;

h. What the proper damages measure is; and

i. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

117. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiff is insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

118. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

119. Plaintiffs and the Class entrusted their Sensitive Information to Defendant on the premise and with the understanding that Defendant would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

120. Defendant owed a duty of care to Plaintiffs and Class Members because it was

foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

121. Defendant has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiffs and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

122. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs and Class Members' Sensitive Information.

123. Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using Sensitive Information its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their Sensitive Information.

124. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their

Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

125. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

126. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

127. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Sensitive Information, a necessary part of obtaining services from Defendant.

128. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Sensitive Information.

129. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Sensitive Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the Class Members' Sensitive Information.

130. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given

the nature and amount of Sensitive Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

131. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

132. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

133. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

134. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiffs' and Class Members' and the importance of exercising reasonable care in handling it.

135. Defendant improperly and inadequately safeguarded the Sensitive Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

136. Defendant breached these duties as evidenced by the Data Breach.

137. Defendant acted with wanton and reckless disregard for the security and

confidentiality of Plaintiffs' and Class Members' Sensitive Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

138. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

139. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs and Class Members' injuries-in-fact.

140. Defendant has admitted that the Sensitive Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

141. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

142. And, on information and belief, Plaintiffs' Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

143. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive

Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

144. Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

145. Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

146. Defendant owed a duty to its patients, including Plaintiffs and the Class, to keep this information confidential.

147. The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' Sensitive Information is highly offensive to a reasonable person.

148. The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant as part of their employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

149. The Data Breach constitutes an intentional interference with Plaintiffs' and the

Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

150. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

151. Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

152. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

153. As a proximate result of Defendant's acts and omissions, the private Sensitive Information of Plaintiffs' and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

154. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class because their Sensitive Information are still maintained by Defendant with its inadequate cybersecurity system and policies.

155. Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiffs and the Class.

156. In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy,

which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

157. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

158. Plaintiffs and the Class delivered their Sensitive Information to Defendant as part of the process of obtaining treatment and services provided by Defendant.

159. Plaintiffs and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiffs' and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

160. In providing their Sensitive Information, Plaintiffs and Class Members entered into an implied contract with Defendant RUMC whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiffs' and the other Class Members' Sensitive Information.

161. In delivering their Sensitive Information to Defendant, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard that data.

162. Plaintiffs and the Class Members would not have entrusted their Sensitive Information to Defendant in the absence of such an implied contract.

163. Defendant accepted possession of Plaintiffs' and Class Members' Sensitive Information.

164. Had Defendant disclosed to Plaintiffs and Class Members that it did not have adequate computer systems and security practices to secure patients' Sensitive Information, Plaintiffs and members of the Class would not have provided their Sensitive Information to Defendant.

165. Defendant recognized that patients' Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and Class Members.

166. Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

167. Defendant breached the implied contract with Plaintiffs and Class Members by failing to take reasonable measures to safeguard its data.

168. Defendant breached the implied contract with Plaintiffs and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

169. As a direct and proximate result of the breach of the contractual duties, Plaintiffs and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiffs and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and Class Members' Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiffs and Class Members were deprived of the data protection and security

that Defendant promised when Plaintiffs and the proposed class entrusted Defendant with their Sensitive Information; and (h) the continued and substantial risk to Plaintiffs' and Class Members' Sensitive Information, which remains in the Defendant's possession with inadequate measures to protect Plaintiffs' and Class Members' Sensitive Information.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

170. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

171. This claim is pleaded in the alternative to the breach of contract claim.

172. Plaintiffs and Class Members conferred a monetary benefit on Defendant when Defendant's clients provided Plaintiffs' and Class Members' Sensitive Information to Defendant, which Defendant collected.

173. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Sensitive Information.

174. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

175. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

176. Defendant acquired the monetary benefit and Sensitive Information through inequitable means in that they failed to disclose the inadequate security practices previously

alleged.

177. If Plaintiffs and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to have their Sensitive Information provided to Defendant.

178. Plaintiffs and Class Members have no adequate remedy at law.

179. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

180. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

181. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from

them.

**COUNT V**
**Violation of New York Deceptive Trade Practices Act**
**New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs and the Class)**

182. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

183. Under the New York Gen. Bus. Law § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

184. Section § 349 applies to Defendant because there is a sufficient nexus between Defendant's conduct and New York. After all, Defendant's headquarters is in New York. And on information and belief, the deceptive acts or practices discussed herein occurred and/or were authorized in New York.

185. Defendant's deceptive acts and/or practices were directed at consumers because Defendant's privacy policy represented to consumers that it would use reasonable data security. Such representations were deceptive because they induced consumers to disclose their Sensitive Information.

186. Additionally, Defendant's deceptive acts and/or practices were directed at consumers because Defendant failed to notify consumers about its Data Breach in a reasonable and timely manner.

187. Defendant represented that it was "not aware" of any misuse of Plaintiffs' and Class Members Sensitive Information. Such representations were deceptive because, upon information and belief, Defendant was aware that cybercriminals had already misused Plaintiffs' and Class Members Sensitive Information.

188. Defendant violated § 349 by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' Sensitive Information, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Sensitive Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, et seq., which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class Members' Sensitive Information; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Sensitive Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

189. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Sensitive Information.

190. Defendant intended to mislead Plaintiffs and Class Members and induce them to

rely on its omissions.

191. Had Defendant disclosed to Plaintiffs and Class Members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the Sensitive Information that Plaintiffs and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

192. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiffs' and Class Members' rights.

193. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Information.

194. And, on information and belief, Plaintiffs' Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

195. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law.

## PRAYER FOR RELIEF

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: January 7, 2025

Respectfully submitted,

/s/ *Sonal Jain*
Sonal Jain
Tyler J. Bean*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
T: (212) 532-1091
E: sjain@sirillp.com
E. tbeam@sirillp.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
E: sam@straussborrelli.com
E: raina@straussborrelli.com

*Pro hac vice forthcoming

*Attorneys for Plaintiffs and Proposed Class*